IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARIS A. VENDITTI, MD,                                  Civil Action No. _____

      Plaintiff,

v.

INDEPENDENCE HEALTH SYSTEM and
EXCELA HEALTH PHYSICIAN PRACTICES,
INC. d/b/a EXCELA HEALTH MEDICAL GROUP,

      Defendants.                                               JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Charis A. Venditti, MD, by undersigned counsel files this Complaint and in support alleges the following.

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1331, and the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(2), *et seq;* and 28 U.S.C. §§ 1331 and 1343(a)(4).

### II. Venue

2. Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in Westmoreland County, Pennsylvania.

### III. Administrative Exhaustion

3. Plaintiff has satisfied all the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as amended, and in particular:

    a. Plaintiff filed a timely Charge of Discrimination with the

        Equal Employment Opportunity Commission (EEOC) on December 20, 2023 against Defendants.

b.     Plaintiff cross filed a timely Charge of Discrimination with the Pennsylvania Human Relations Commission (PHRC) on December 20, 2023.

c.     Plaintiff received a Notice of Right to Sue from the EEOC dated June 12, 2024 and this action was filed with this Court within 90 days of receipt of such Notice.

## IV.    Parties

4. Plaintiff, Charis A. Venditti, MD, is an individual who resides in Allegheny County, Pennsylvania.

5. Defendant, Independence Health System ("IHS"), is a health system corporation with its principal place of business at One Hospital Way, Butler, Pennsylvania 16001. At all times relevant hereto, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 43 Pa. Cons.Stat.Ann. § 955.

6. Defendant, Excela Health Physician Practices, Inc. d/b/a Excela Health Medical Group ("EHMG"), is a Pennsylvania corporation located at 532 W. Pittsburgh Street, Greensburg, Pennsylvania 15601-2242. At all times relevant hereto, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 43 Pa. Cons.Stat.Ann. § 955.

7. Defendants IHS and EHMG are joint employers. At all times relevant hereto, Defendants were an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 43 Pa. Cons.Stat.Ann. § 955.

## V.    Factual Background

8. In June 2021, Defendants hired Dr. Venditti as a physician specializing in the areas of Breast Surgical Oncology (Breast Surgery) and Obstetrics and Gynecology

(General), last assigned to EHMG, now part of Defendant IHS.

9. Defendants EHMG and IHS are joint employers as they exerted significant control over Dr. Venditti; shared the authority to hire and fire employees; shared the authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; shared day-to-day supervision, including employee discipline; and shared control of employee records.

10. On or about November 20, 2022, Dr. Venditti notified Dr. Sharon Goldstein, the Breast Program Director, that she was pregnant and that her projected due date was July 20, 2023.

11. On or about January 24, 2023, Dr. Venditti announced her pregnancy to her staff.

12. In February 2023, Amy Veis, Office Manager, sent an email advising of Dr. Venditti's planned maternity leave and blocking off her schedule during her maternity leave.

13. On April 18, 2023, Dr. Venditti emailed the benefits department requesting a home host waiver to allow treatment at Highmark due to her high-risk pregnancy.

14. On June 15, 2023, during a meeting with Judy Haliko, Vice President of Operations, Primary Care, and Dr. Karen Lang, Senior Vice President, EMHG, Defendants informed Dr. Venditti that her employment was being terminated as a result of a purported reduction in force effective December 15, 2023, due to economic reasons.

15. During the meeting, Dr. Venditti asked Ms. Haliko and Dr. Lang if her termination was because of her pregnancy as the circumstance did not look like a

purported reduction in force given that Defendants were in the process of hiring two additional surgeons.

16. At the meeting, Defendants handed Dr. Venditti a letter dated June 15, 2023, which informed her that she was being given 180-days' notice for her termination without cause, as set forth in section 6.1.1. of her employment contract.

17. At no time during the June 15, 2023 meeting, did Defendants indicate to Dr. Venditti that she had any performance problems or that the decision to terminate her employment was in any way related to any alleged performance problems.

18. During the June 15, 2023 meeting, Dr. Venditti offered several alternatives to termination which would provide additional revenue for Defendants so that she would not be terminated.

19. This unexpected termination decision was communicated four weeks before Dr. Venditti gave birth on July 18, 2023.

20. Dr. Venditti made it clear during the June 15, 2024 meeting that she had every intention to return to work on October 9, 2023 (her return-to-work date) and work through her notice period.

21. Ms. Haliko said to Dr. Venditti, "what we were thinking was that you could go on your maternity leave and just not come back and we would pay you out until December 15."

22. Dr. Venditti responded, "Why wouldn't I come back? I have patients to care for and I would want to come back and that's my plan."

23. In response, Dr. Lang stated, "Why don't you take some time to think about that. You may feel very differently when you have a baby in your arms."

24. Ms. Haliko reiterated at the meeting, "You're allowed to come back but we figured we would let you take time off to be with your baby and we would just pay you out."

25. Ms. Haliko further told Dr. Venditti that there would be no communication with her patients regarding her separation from employment until the parties agreed to the verbiage Defendants would use in such communication.

26. That evening, Dr. Venditti called her immediate supervisor, Sharon Goldstein, MD, Breast Program Director, and discussed her termination and expressed that she thought the termination decision was related to her pregnancy.

27. Dr. Venditti engaged in protected conduct when she reported to Dr. Goldstein that she believed her termination was discriminatory based on her pregnancy.

28. The following day, Defendants sent Dr. Venditti a letter dated June 16, 2023, which stated, "While working out your term, it will be expected that you continue to see patients as scheduled, without incident, and in a manner that does not disrupt normal operations of your immediate treatment area as well as adjacent treatment areas."

29. Despite the extremely discriminatory comments to Dr. Venditti during the June 15, 2023 meeting, she continued to work in an extremely professional manner, exhibiting a high degree of clinical skill, talent, ability and poise while treating patients in the clinic and performing surgeries through and including the week of July 10, 2023, the final week before she began her maternity leave.

30. On September 7, 2023, one month before Dr. Venditti was scheduled to return to work from her maternity leave, she received a certified letter from Defendants that stated in part, "Upon careful consideration, EMHG feels that it is not necessary for

you to return to the provision of services and/or in-office attendance on or following the return date."

31. Notably, the letter did not state that Dr. Venditti was not permitted to return to work, rather it stated that Defendants did not feel it was necessary for her to do so.

32. On September 20, 2023, in an effort to save her job, Dr. Venditti met with Dr. Lang and Ms. Haliko.

33. During the meeting, Dr. Venditti provided several alternatives to being terminated:

   a. remaining full-time and be allowed to add a breast clinic in Butler County while offering Butler County surgery 1-2 days a month;

   b. remaining full-time in Westmoreland County and adding an additional Breast clinic or a GYN clinic as was specified in her employment contract;

   c. being allowed to extend her hours or increase the number of days for her clinic so that she could see more patients;

   d. entering into a new contract that would reduce her schedule to part-time until Defendants' financial conditions improved; or

   e. restructuring her current contract to reduce the cost to Defendants.

34. Despite these extremely reasonable alternatives, Dr. Lang confirmed that Dr. Venditti's termination would remain in place.

35. Dr. Venditti again made it clear in the September 20, 2023 meeting that she had every intention to return to work on October 9, 2023 (her return-to-work date) and to work through her notice period.

36. Also during the meeting, Dr. Venditti requested an opportunity to address the Physician Advisory Committee to provide alternatives to her termination and to request reconsideration of the decision to eliminate her position.

37. Dr. Lang and Ms. Haliko advised Dr. Venditti that the decision was final and that there would be no reconsideration of the termination decision.

38. On September 29, 2023, Dr. Venditti learned that access to her work email and patient charts were terminated the previous day.

39. That same day, Dr. Venditti also learned that her staff had been told to move all of Dr. Venditti's patients from her October and November schedule to another provider.

40. Dr. Venditti further learned that the staff had been instructed to tell her patients, "Dr. Venditti has decided not to come back from maternity leave and instead is going to spend time with her baby."

41. The above statement to patients was not true as Dr. Venditti was being terminated and was being denied the opportunity to return to work after her maternity leave ended before her termination date, despite requesting to return to work.

42. On October 6, 2023, three days before Dr. Venditti was scheduled to return from maternity leave, she received a certified letter from Tom Genevro, Chief Human Resource Officer, advising that Defendants would not allow Dr. Venditti to return to work.

43. Defendants assigned Dr. Venditti's patients to other physicians who were not pregnant and who did not engage in protected activity.

## Count I
## Title VII of the Civil Rights Act of 1964
## 42 U.S.C. § 2000e, *et seq.*
## Sex (Pregnancy) Discrimination

44. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 43 as if fully restated herein.

45. Defendants terminated Plaintiff because of her sex (pregnancy), in violation of Title VII of the Civil Rights Act of 1944, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

46. Defendants' actions were taken with malice or reckless indifference to Plaintiff's federally protected rights.

47. As a direct and proximate result of Defendants' violations of Title VII, Dr. Venditti has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority, in addition to severe emotional distress and like conditions.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, and the following legal and equitable remedies:

    a. That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended;

    b. That Defendants be ordered to reinstate Plaintiff into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

    c. That Defendants be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendants' illegal treatment of Plaintiff, with interest, in addition to reimbursement for lost pension, social security, experience, training

opportunities and other benefits;

d. That Defendants be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e. That Defendants be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

g. That Plaintiff be awarded punitive damages in an amount sufficient to punish that Defendants and to deter similar conduct;

h. That Defendants be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

i. That Plaintiff be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorney's fee; and

j. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

### Count II
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq.*
### Sex (Pregnancy) Retaliation

48. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 47, as if fully restated herein.

49. Defendants terminated Plaintiff in retaliation for her complaints of sex (pregnancy) discrimination, in violation of Title VII of the Civil Rights Act of 1944, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

50. Defendants' actions were taken with malice or reckless indifference to Plaintiff's federally protected rights.

51. As a direct and proximate result of Defendants' violations of Title VII, Dr. Venditti has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority, in addition to severe emotional distress and like conditions.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, and the following legal and equitable remedies:

   a. That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended;

   b. That Defendants be ordered to reinstate Plaintiff into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

   c. That Defendants be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendants' illegal treatment of Plaintiff, with interest, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

   d. That Defendants be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

   e. That Defendants be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

   f. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

   g. That Plaintiff be awarded punitive damages in an amount sufficient to punish that Defendants and to deter similar conduct;

   h. That Defendants be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by

        Title VII;

i.    That Plaintiff be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorney's fee; and

j.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

### Count III
### Family and Medical Leave Act
### 29 U.S.C. §2614(a)
### Restoration to Position

52.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 51 as if fully restated herein.

53.    Defendant interfered with, restrained, and/or denied Dr. Venditti's exercise of her rights to FMLA leave by refusing to permit Dr. Venditti to return to work during the balance of her 180-day notice period, using Dr. Venditti's absence from work for FMLA qualifying leave as a negative factor in its employment actions against her and terminating Dr. Venditti after her scheduled return to work from a FMLA-protected leave.

54.    Defendant failed to restore Dr. Venditti at the conclusion of her FMLA-qualifying leave of absence and terminated her employment.

55.    Defendants' actions were undertaken with reckless indifference to Dr. Venditti's federally protected rights to be restored to her position at the conclusion of her FMLA-qualifying leave of absence.

56.    As a direct and proximate result of Defendant's violations of the FMLA, Dr. Venditti has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority.

WHEREFORE, Plaintiff demands judgment, pursuant to 29 U.S.C. § 2617(a), and the following legal and equitable remedies:

a. That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the FMLA;

b. That Defendants be ordered to reinstate Plaintiff into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

c. That Defendants be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendants' illegal treatment of Plaintiff, with interest, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d. That Defendants be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e. That Defendants be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f. That Plaintiff be awarded liquidated damages in an amount equal to the wages, benefits and other compensation denied or lost to Plaintiff;

g. That Defendants be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by the FMLA;

h. That Plaintiff be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorney's fee; and

i. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count IV
## Family and Medical Leave Act
## 29 U.S.C. § 2615(a)(2)
### Discrimination/Retaliation

57. Plaintiff incorporates by reference the allegations in paragraphs 1 through 56 as if fully restated herein.

58. Dr. Venditti is an eligible employee as defined by the FMLA and requested a needed FMLA leave of absence because of her own serious health condition. Therefore, Dr. Venditti exercised her rights under the FMLA, 29 U.S.C. § 2612(a)(1)(D).

59. Defendants discharged Dr. Venditti because she took FMLA qualifying leave, in violation of 29 U.S.C. § 2615(a)(2).

60. Defendants also retaliated against Dr. Venditti because she took leave protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

61. Defendants' actions were undertaken with reckless indifference to Dr. Venditti's federally protected right to remain employed at the conclusion of her FMLA-qualifying leave of absence.

62. As a direct and proximate result of Defendants' violations of the FMLA, Dr. Venditti has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority.

WHEREFORE, Plaintiff demands judgment, pursuant to 29 U.S.C. § 2617(a), and the following legal and equitable remedies:

   a. That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the FMLA;

   b. That Defendants be ordered to reinstate Plaintiff into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages,

       benefits, training and seniority;

c.     That Defendants be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendants' illegal treatment of Plaintiff, with interest, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d.     That Defendants be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e.     That Defendants be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f.     That Plaintiff be awarded liquidated damages in an amount equal to the wages, benefits and other compensation denied or lost to Plaintiff;

g.     That Defendants be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by the FMLA;

h.     That Plaintiff be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorney's fee; and

i.     That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

                        Respectfully submitted:

                        **RAMAGE LYKOS, LLC**
                        */s/ Colleen E. Ramage*
                        Colleen Ramage Johnston
                        PA I.D. No. 64413
                        Nikki Velisaris Lykos
                        PA I.D. No. 204813
                        525 William Penn Place, 28th Floor
                        Pittsburgh, PA  15219
                        (412) 325-7700
                        cramage@ramagelykos.law
                        nlykos@ramagelykos.law
                        Attorneys for Plaintiff